IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TRISTAN J. HALL,

    Plaintiff,

v.

SHAUN A. SAKOVICH; AND THE CITY
OF KNOXVILLE, TENNESSEE,

    Defendants.

Case No. _____

# COMPLAINT

Comes the Plaintiff, by and through counsel, and for a cause of action against the Defendants would state as follows:

**A.** **PARTIES**

1. Plaintiff is a citizen and resident of the State of Tennessee.

2. Defendant Shaun A. Sakovich is an investigator/detective of the Knoxville Police Department, who, upon information and belief, is a citizen and resident of Knox County, Tennessee and may be served with service of process at 800 Howard Baker Jr. Avenue, Knoxville, Tennessee 37915.

3. Defendant City of Knoxville, Tennessee is the employer of Defendant Sakovich. This Defendant may be served with process through the City Mayor, Indya Kincannon, 400 Main St., Room 691, Knoxville, TN 37902.

**B.** **JURISDICTION AND VENUE**

4. This Court has jurisdiction and venue over Plaintiff's claims brought pursuant to Title 42 of the United States Code section 1983-1988. *See* 28 U.S.C. § 1331, 1343(a)(3).

5. Venue exists in this Court pursuant to Title 28 of the United States Code section 1391.

C. **STATEMENT OF FACTS**

6. Defendant Sakovich is an investigator/detective with the Knoxville Police Department.

7. Lauren N. Frontz ("Frontz") is a former girlfriend of the Plaintiff's.

8. On June 20, 2020, Plaintiff and Frontz first met via an online dating site.

9. Later that day, Plaintiff and Frontz made a date and met for the first time at a Cazzy's Corner Grill, 2099 Thunderhead Road, Knoxville, Tennessee 37922.

10. Subsequently, Frontz stayed overnight with Plaintiff, and the two began communicating daily and seeing each other frequently and intimately. They were, in other words, dating one another.

11. Over the next few weeks, it became apparent to Plaintiff that Frontz was still involved with at least two ex-boyfriends, later identified as Lorenzo Ramunno and Matthew Tunstall, who would text her frequently in the presence of Plaintiff. According to Frontz, however, she was not involved with these men, and both were stalking and harassing her via e-mail and text.

12. On or around July 8, 2020, Frontz advised Plaintiff that she had tested positive for chlamydia and claimed that she had never had an STD before. Thereafter, Plaintiff also tested positive for chlamydia and was treated.

13. On July 11, 2020, Plaintiff and Frontz went shopping at Tanger Outlets in Sevierville, Tennessee. Throughout the day, Defendant received multiple phone calls apparently notifying her of flowers sent by Tunstall.

14. On July 13, 2020, Plaintiff told Frontz that he no longer wished to date her, because it was apparent that she was still heavily involved with other men. Frontz, however, convinced Plaintiff

that she was not involved with other men, and Plaintiff and Frontz continued to see each other frequently and intimately.

15. On July 21, 2020, Plaintiff and Frontz essentially broke off their relationship, although the two remained friendly and continued to communicate.

16. Plaintiff and Frontz last met in person at Parkside Grill, 338 North Peters Road, Knoxville, Tennessee 37922, on the evening of July 25, 2020. The two met for approximately three (3) hours. Around 9:00 P.M., Frontz left abruptly, saying she had to meet one of her girlfriends, but, before leaving Parkside Grill, Defendant and Plaintiff planned to meet for breakfast the following day.

17. On the morning of July 26, 2020, around 1:00 A.M., Plaintiff texted Frontz to make sure she was okay given the abrupt nature of her departure at dinner. Frontz did not respond to Plaintiff's texts. However, Plaintiff and Frontz later talked by phone and confirmed their plans to meet for breakfast at her residence later that morning.

18. Around 7:30 a.m. on July 26, 2020, Plaintiff traveled to Frontz' residence for breakfast, but discovered an unknown vehicle was in Frontz' driveway and Plaintiff returned to his home, suspecting that the vehicle in question might belong to the ex-boyfriend, the one who Plaintiff had previously claimed was harassing her.

19. Around 9:00 a.m. that morning, Plaintiff had a text conversation with Frontz' ex-boyfriend, Ramunno, after finding his number online and believing Ramunno was the owner of the vehicle Plaintiff had witnessed in Defendant's driveway hours earlier.

20. Later that day same day, Frontz attempted to contact Plaintiff, but Plaintiff ignored Frontz' communication.

21. The next day, on July 27, 2020, Plaintiff left two voice messages for Frontz, essentially seeking closure and an explanation as to what had gone wrong between them.

**22.** Plaintiff had no further communications with Frontz until Friday, July 31, 2020, whereupon a previously ordered Coach brand dog collar, which Plaintiff had purchased for Frontz as a gift to her and her dog, was delivered to Frontz' residence, and Plaintiff simply relayed that he hope Frontz loved it.

**23.** At no point, whether in person, via text message, voice messages, or any other medium did Plaintiff communicate any threat of harm to Frontz, let alone with an intent to do so. This much is readily apparent from the texts and communications which have been preserved.

**24.** At no point, whether in person, via text message, voice messages, or any other medium did Plaintiff demonstrate any animus or profanity to Frontz.

**25.** On July 31, 2020, for reasons which are not entirely clear yet, but which were clearly motivated by Frontz' continuing relationships with her ex-boyfriends, who were also allegedly harassing her, Frontz obtained an *ex parte* order of protection against Plaintiff and a warrant charging Plaintiff with "Harassment" under Tenn. Code Ann. § 39-17-308. A copy of the warrant is attached hereto as **Exhibit A**. Plaintiff learned of the warrant on August 1, 2020, surrendered to it on August 3, 2020, had to hire an expensive lawyer to defend himself, and had to wear an ankle bracelet for forty-three (43) days, which is longer than Plaintiff ever dated Frontz in the first place.

**26.** Frontz had no probable cause to initiate criminal charges against Plaintiff. She did so maliciously, knowing full well the emotional distress and turmoil such a charge would cause Plaintiff, and she did so to that end, purposed to cause harm and whatever intractable but plainly illegitimate other reasons.

**27.** Of course, despite the money, time, and turmoil spent and suffered by Plaintiff, the Frontz frivolous charges against him were dismissed on September 14, 2020. (Order of Dismissal, previously attached hereto as Exhibit A).

**28.** On or around August 9, 2020, Frontz instructed Matthew Tunstall to initiate contact with the Plaintiff; and, on August 11, 2020, Tunstall communicated multiple threats stating, "I'll . . . kill you" and "I'll come for YOU." A copy of said communication is attached hereto as **Exhibit B**.

**29.** On August 24, 2020, Plaintiff contacted Defendant Sakovich via his direct extension at the Knoxville Police Department (865-215-6838) and Plaintiff advised Defendant Sakovich of the threats received from Tunstall. Defendant Sakovich blatantly refused to assist the Plaintiff or even take a report.

**30.** The police report relating to said arrest is also informative. A copy of the same is attached hereto as **Exhibit C**. It states in a narrative written by Sakovich that "ADA [Willie] Lane informed me that she did not believe we had probable cause for a stalking warrant." He continued, "instead we read through the text of the Harassment statute and found we met the elements of the offense for that charge."

**31.** Without question, hesitation or reservation, no fact as asserted by Frontz in either her petition for an *ex parte* order of protection or in her narrative to Defendant Sakovich meets the elements of the harassment statute, which is why, upon information and belief, the district attorney's office dismissed said charge without seeking grand jury review.

**32.** Pursuant to said statute, in order for a proper charge to be filed against any person, said person must have "communicate[d] a threat to another person" … wherein the person communicating the threat "[i]ntends the communication to be a threat of harm to the victim; and a

- 5 -
Case 3:21-cv-00276-KAC-DCP   Document 1   Filed 07/31/21   Page 5 of 10   PageID #: 5

reasonable person would perceive the communication to be a threat of harm." T.C.A. § 39-17-308.

**33.** At no time was any threat ever made by Plaintiff against Frontz. Period.

**34.** Upon information and belief, Defendant Sakovich was clearly aware no threat of harm was ever made by Plaintiff against Frontz.

**35.** Upon information and belief, Defendant Sakovich either did not review the harassment statute in question or he completely ignored it.

**36.** Defendant Sakovich, as an officer of the law, knew or should have been trained to know that in order to obtain an arrest warrant, all elements of the offense need to be supported by probable cause.

**37.** In arresting the Plaintiff, Defendant Sakovich acted with a complete disregard to the truth and ignored the element test of the harassment statute in question and in doing so, he acted with knowledge that Plaintiff's right to remain free from unreasonable seizure is a well-recognized right under federal law and that a vitiation of such a right must be made only on probable cause. A reasonable observer, under a third-party reasonable person standard, would likewise have concluded, given the facts and data available to Defendant Sakovich, that no probable cause existed to obtain a warrant.

### D.     CAUSES OF ACTION

**38.** Defendant Sakovich's arrest of Plaintiff and obtaining warrants against him, which are not supported by probable cause, constitute a violation of Plaintiff's constitutional right to be free from unreasonable seizure pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See U.S. Const., am. XIV; cf. 42 U.S.C. §§ 1983-1988.

**39.** Plaintiff has been damaged by the aforementioned actions by way of mental and emotional anguish, aggravation of a pre-existing PTSD diagnosis, and costs incurred in attorneys' fees for the false, defamatory, harassing and illegal charges filed against him by these Defendants.

**40.** Based on the foregoing, Plaintiff hereby sues Defendant Sakovich for a violation of his right to be free from unreasonable seizure. At all times material hereto, Defendant Sakovich was acting under the color of state law. Further, Defendant Sakovich violated the rights secured to this Plaintiff by the constitution, treaties and laws of the United States of America. Therefore, Defendant Sakovich is liable to this Plaintiff for all causally-related damages. See 42 U.S.C. §§ 1983, 1988.

**41.** Upon information and belief, Defendant Sakovich knew the charge of harassment filed against this Plaintiff was without merit or cause.

**42.** Under 42 U.S.C. § 1983, a person has a federal cause of action for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by the United States Constitution and federal laws.

**43.** The Due Process Clause of the Fourteenth Amendment prohibits Defendant Sakovich from depriving Plaintiff of his right to be free from unreasonable seizure in the absence of probable cause. No actual, true facts in possession of any Defendant named herein constitute probable cause for the harassment charge these Defendants brought against Plaintiff.

**44.** Restricting a citizen's freedom (by way of seizure or arrest) in the absence of probable cause that said person committed a crime is objectively unreasonable conduct under Fourteenth Amendment. Further, the right to be free from unreasonable seizure (an arrest or detention in the absence of probable cause), is a well and long-established right, and therefore, Defendant Sakovich's violation of the same is sufficient to defeat any claim of qualified immunity under

either the objective or subjective prongs of the Monell standard. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).

45. Based on the foregoing, Plaintiff sues Defendant Sakovich for violating his rights secured by the constitution, laws and treaties of the United States, and at all times material hereto, said Defendant was acting under color of state law. Plaintiff seeks all damages to which he may be entitled for said violation of his civil rights pursuant to Title 42 of the United States Code section 1988.

46. Regarding municipal liability, and upon information and belief, Defendant City of Knoxville has a history of similar unconstitutional conduct (wrongful arrest and seizure), and therefore, its prior actions constitute a custom thereby rendering it liable to Plaintiff for the full amount of his damages sought herein.

47. In the alternative, and upon information and belief, Defendant City of Knoxville failed to properly train Defendant Sakovich, who represents himself to be an investigator/detective as to the necessary elements for a claim of harassment. This failure to train of Defendant City of Knoxville was the driving force behind the constitutional injury complained of herein.

48. In the second alternative, and upon information and belief, Defendant City of Knoxville failed to properly supervise its employee, Defendant Sakovich, as to what evidence was necessary before seeking an arrest for the Plaintiff on a charge of harassment. This failure to supervise of Defendant City of Knoxville was the driving force behind the constitutional injury complained of herein.

49. In the third alternative, and upon information and belief, Defendant City of Knoxville's policies and procedures were deficient in that Defendant Sakovich clearly had no clue whatsoever

as to the element test of harassment, and its policies and procedures were the driving force behind the constitutional injury.

50. In the fourth alternative, and upon information and belief, certain supervisory level officials of Defendant City of Knoxville have ratified the conduct of Defendant Sakovich. This ratification of Defendant Sakovich's actions by the Defendant City of Knoxville renders Defendant City of Knoxville liable to Plaintiff under federal common law and 42 U.S.C. section 1983.

51. Based on the foregoing, Plaintiff sues Defendant City of Knoxville for its unconstitutional customs, policies and procedures which were the driving force behind Plaintiff's constitutional injuries.

52. As a result of these Defendants' constitutional violations, Plaintiff has suffered mental and emotional anguish, an aggravation of a pre-existing mental injury (PTSD), and a loss of business profits. Plaintiff would seek all damages as set forth herein from Defendants Sakovich and City of Knoxville pursuant to Title 42 of the United States Code section 1988.

53. Based on the foregoing, Plaintiff sues all Defendants and seeks damages in the amount of $1,500,000.00. Plaintiff would also request this Court issue process, requiring these Defendants to answer this Complaint. Plaintiff would additionally request a jury be empaneled to try this cause, and at the conclusion of the same, he be entitled to actual costs and discretionary costs. At the conclusion of this action, Plaintiff would specifically request attorneys' fees pursuant to Title 42 of the United States Code section 1988. Plaintiff would also request any further relief to which he may be entitled.

Respectfully submitted this 31st day of July, 2021.

/s/ Darren V. Berg
**Darren V. Berg (BPR 23505)**
P.O. Box 33113
Knoxville, TN 37930

865-773-8799 (phone)  
dberglawfirm@gmail.com  
*Attorney for the Plaintiff*